[THE STATE, EX REL.] BISPECK, APPELLANT, v. BOARD OF COMMISSIONERS OF TRUMBULL COUNTY, APPELLEE.

[Cite as Bispeck v. Bd. of Commrs. of Trumbull Cty. (1988), 37 Ohio St. 3d 26.]

(No. 86-2087—Submitted February 16, 1988—Decided May 25, 1988.)

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines* and *Barry Laine,* for appellant.

*Dennis Watkins,* prosecuting attorney, and *Paul E. Heltzel,* for appellee.

*Per Curiam.* An action in mandamus is a proper course by which laid-off county employees may seek to compel their employer to abide by orders of the State Personnel Board of Review disaffirming their layoffs. *State, ex rel. Potten,* v. *Kuth* (1980), 61 Ohio St. 2d 321, 15 O.O. 3d 391, 401 N.E. 2d 929.

In answering such a complaint for a writ of mandamus, however, the appointing authority may raise as an affirmative defense that the board abused its discretion by disaffirming the layoff order. *State, ex rel. Potten, supra; State, ex rel. Ogan,* v. *Teater* (1978), 54 Ohio St. 2d 235, 8 O.O. 3d 217, 375 N.E. 2d 1233.

An abuse of discretion by the board may be found "only where the board's order is contrary to law, or where there is no evidence to support its decision." *State, ex rel. Potten, supra,* at 323, 15 O.O. 3d at 393, 401 N.E. 2d at 931.

The court of appeals concluded that the board's decision was unlawful because the board believed that the appellee had the burden of proving by a preponderance of the evidence increased economy or efficiency as a result of Bispeck's layoff.

Bispeck contends, and appellee does not dispute, that the court of appeals misapplied paragraph two of the syllabus of *State, ex rel. Potten* in reaching the conclusion that the board erred as to which party had the burden of proving that the abolishment resulted in increased economy or efficiency. We agree.

Paragraph two of the syllabus of *State, ex rel. Potten* provides:

"At a hearing conducted before the State Personnel Board of Review, the burden of proving defects in the procedure used to lay off an employee in the classified state service is on the employee."

This syllabus paragraph sets forth the rule regarding the burden of proving *procedural* defects in the layoff process. The dispute in this case is over the sufficiency of the *substantive* reasons for the abolishment of the Risk Manager's position.

This court has held that the appointing authority has the burden of proving by a preponderance of the evidence the truth of charges filed in a dismissal proceeding. *Cupps* v. *Toledo* (1961), 172 Ohio St. 536, 18 O.O. 2d 82, 179 N.E. 2d 70. This principle also has application in an appeal of a job abolishment. The board's rule concerning appeals of abolishments states:

"Appointing authorities shall demonstrate by a preponderance of the evidence that a job abolishment was undertaken due to the lack of the continuing need for the position, a reorganization for the efficient operation of the appointing authority, for reasons of economy or for a lack of work expected to last more than twelve months." Ohio Adm. Code 124-7-01(A)(1).

The court of appeals based its denial of the writ entirely on its erroneous reading of the syllabus in *State, ex rel. Potten.* Thus, unless the board's decision was otherwise contrary to law or not supported by the evidence, Bispeck is entitled to the requested writ.

The appellee contends that the board unlawfully exceeded the scope of its appellate authority by substituting its judgment for that of the appellee and that the board may not exercise its discretion to overrule lawful decisions made by an appointing authority.

The appellee's decision to abolish the position of Risk Manager was made pursuant to the authority granted in R.C. 124.321, which provides, in pertinent part:

"(D) Employees may be laid off as a result of abolishment of positions. Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within an appointing authority. Appointing authorities shall themselves determine whether any position should be abolished and shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the notice of abolishment. If an abolishment results in a reduction of the work force, the appointing authority shall follow the procedures for laying off employees[.] * * *"

The board's powers and duties regarding appeals of such abolishments are set forth in R.C. 124.03, which provides, in pertinent part:

"The state personnel board of review shall exercise the following powers and perform the following duties:

"(A) Hear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification * * *. The board may af-

firm, disaffirm, or modify the decisions of the appointing authorities or the director, as the case may be, and its decision is final. * * *''

The appellee argues that the provision of R.C. 124.321(D) that states, "* * * [a]ppointing authorities shall themselves determine whether any position should be abolished * * *," means that appellee has exclusive authority to make decisions regarding abolishments, and that the board's power under R.C. 124.03 extends only to the review of the procedural requirements which the appellee must follow to accomplish an abolishment.

This court has previously rejected such a narrow interpretation of the board's authority:

"In reviewing a decision of the appointing authority regarding the layoff of employees in the classified civil service under R.C. 124.03(A), the State Personnel Board of Review is empowered to determine whether the layoff was necessary and whether proper layoff procedures were followed." *State, ex rel. Ogan, supra,* at paragraph four of the syllabus.

In *State, ex rel. Ogan,* we established the proposition that the scope of the board's powers encompasses the examination of the basis and supporting rationale for an appointing authority's decision:

"The director's contention that the State Personnel Board of Review may only disaffirm layoff orders of the appointing authority where it finds that the appointing authority abused its discretion is clearly in error. The General Assembly, in enacting R.C. 124.03(A), gave the board broad powers in reviewing final decisions of the appointing authorities. By providing that the board may affirm, disaffirm, or modify the decisions of the appointing authority relative to layoff, the General Assembly has

authorized the board to disaffirm layoff orders not only where it finds that the appointing authority acted arbitrarily, unreasonably, or unlawfully, but also where it finds from an independent review of the layoff that the decisions made and actions taken by the appointing authority regarding the layoff of employees were improper or unnecessary." *Id.* at 245, 8 O.O. 3d at 222-223, 375 N.E. 2d at 1240.

Thus, although the board may not substitute its judgment for that of the appellee, the board does have the power to determine from the evidence presented to it whether the appellee's abolishment of Bispeck's position was arbitrary, unreasonable, or unlawful and whether the abolishment was proper and necessary. We find that the board's actions in this case did not exceed its authority.

The appellee next contends that the board misconstrued the terms "economy" and "efficient operation" in the context of the permissible reasons for abolishment of positions as set forth in R.C. 124.321(D) and that there was no evidence from which the board could conclude that the abolishment did not result in increased economy and efficiency.

R.C. 124.321(D) provides, in pertinent part:

"* * * An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. * * * Appointing authorities * * * shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the notice of abolishment. * * *''

Ohio Adm. Code 123:1-41-04 provides:

"(A) Reasons for abolishment. An appointing authority may abolish

positions in the classified civil service for any of the following reasons: as a result of a reorganization for the efficient operation of the appointing authority; for reasons of economy; or for lack of work which is expected to be permanent. * * *

"(B) Determination and filing a statement of rationale and supporting information * * *.

"State agencies and county offices. The appointing authorities of * * * county offices shall file with the director [of administrative services] a statement of rationale and supporting information for the determination to abolish positions. * * *"

The appellee's statement of rationale and supporting information for the abolishment of the Risk Manager's position were submitted to the Director of Administrative Services in a letter dated January 23, 1985. That letter indicated:

"* * * The affected employees [including Bispeck] are being laid-off due to job abolishments, due to a lack of continued need for the positions, as a result of a reorganization for the efficient operation of the Commissioners' Office."

The statement of rationale for the abolishment of the Risk Manager's position essentially consisted of a list of the various components of the duties and responsibilities of the Risk Manager and the various county and other entities that would assume responsibility for performing those functions after the abolishment.

The board's initial order of August 20, 1985 stated that:

"* * * Two questions remain. Was there an increase in efficiency and a showing of economy in these abolishments? * * * The Board finds that Appellee has established that it is saving money and is more efficient by these layoffs. * * *"

Upon reconsideration, however, the board, on August 29, 1985, changed its original decision, and disaffirmed the abolishment:

"* * * We do agree, however, that the appellee failed to show by a preponderance of the evidence that there was increased efficiency and economy as a result of these layoffs. Evidence of not having to pay the salaries on its own is not sufficient to prove increased efficiency and economy as required. Additionally, there was insufficient evidence to prove either the insurance or grants program was more efficient. If anything, the evidence tended to show otherwise."

The appellee argues that the board's use of the terms "increased efficiency" and "more efficient" in its August 29, 1985 order indicates that the board requires an appointing authority to demonstrate that there is a greater output of performing or functioning after the abolishment. The appellee contends that such a requirement misconstrues and exceeds the provision of R.C. 124.321(D) which allows abolishments where a reorganization occurs for "efficient operation" or "for reasons of economy."

As discussed above, the board's authority extends to determining whether the abolishment was arbitrary, unreasonable, or unlawful and whether the abolishment was proper and necessary. In this case, the appellee contends Bispeck's position was abolished as a part of the reorganization for the efficient operation of the county commissioners' office. In order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operations before and after the abolition.

We believe that the intent of the General Assembly was to require an appointing authority to justify a job

abolishment by proving that the abolishment would result in more efficient operations. Given that intent, the appellee's reliance on *Weston* v. *Ferguson* (1983), 8 Ohio St. 3d 52, 8 OBR 523, 457 N.E. 2d 818, is misplaced.

In *Weston,* we said that "[t]he critical guideline in the abolition of a civil service position is that it must be done in good faith and not as a subterfuge." *Id.* at 54, 8 OBR at 524, 457 N.E. 2d at 819. However, the appellee argues that because *Weston* upheld an abolishment where there was no finding of bad faith and the position was actually abolished, the similar factual circumstances in this case require the affirmance of the abolishment of the Risk Manager's position. We find the appellee's contention unpersuasive.

First, at the time of the abolishment of the position in *Weston,* there were no statutory requirements or state rules or regulations establishing a formal procedure for abolishment of a position. Since that decision, however, a comprehensive statutory and regulatory framework for such abolishments has been established. See R.C 124.321 *et seq.* and Ohio Adm. Code Chapter 124-7. Second, the abolishment of an employee's position may be unreasonable or arbitrary even though the appointing authority did not act in bad faith or engage in a subterfuge. We hold that the board did not misconstrue or misapply the standards of efficiency or economy that an appointing authority must meet to justify the abolishment of a position.

In reviewing the evidentiary sufficiency of the board's decisions, we have adopted the rule that a decision of the board will not be disturbed if there is some evidence to support its decision. *State, ex rel. Ogan, supra.* In this case, there was ample evidence in the record for the board's decision.

To support its decision to abolish the position of Risk Manager, appellee's sole witness was county commissioner Arthur Magee. He testified that, as a result of the reorganization and abolishment, the duties formerly being performed by Bispeck were being performed in a timely and efficient manner and that no additional staff had been added as a result of the abolishment. The appellee argues that the salary savings achieved by the abolishment of the Risk Manager's position meet the "economy" criterion and that the evidence that all the functions formerly performed by the Risk Manager continued to be performed in a timely and effective manner satisfy the "efficiency" criterion. We disagree.

Although commissioner Magee acknowledged the services performed by the Risk Manager were important, the position was abolished without any independent study of the effects of the change. He testified further that he was not aware of the specific day-to-day functions performed by the Risk Manager and was unable to identify any insurance program changes or improvements that had occurred as a result of the abolishment. The evidence before the board also indicated that the county had realized significant economic benefits as a result of Bispeck's tenure as Risk Manager, but that those benefits would be lost by the decentralization of the insurance programs after the abolishment. We find that the record fully supports the board's decision to disaffirm the abolishment.

The appellee's final proposition contends that the board improperly reconsidered its original decision.

Pursuant to R.C. 124.03(F), the board has adopted rules governing appeal hearings. Ohio Adm. Code 124-15-05 authorizes motions for reconsideration of board decisions:

"Any party may move for reconsideration of a final order of the state personnel board of review. Motions for reconsideration shall be filed within ten calendar days of mailing of the final order of the state personnel board of review."

The board's reconsideration of its original decision was prompted by county commissioner Latell's letter. The board stated:

"* * * On August 12, 1985, the Board received a letter from Appellee Commissioner Latell. In that letter, Commissioner Latell took a position contrary to the stated position of the other Trumbull County Commissioners and requested an opportunity to be heard by this board prior to its issuing a final order. Appellee Commissioner Latell's filing with this board will be considered as a motion for reconsideration.

"Although the board's initial ruling was made after an open meeting held by this board, to which the parties had notice and an opportunity to attend, the board feels that the interests of justice and fairness would be best served by conducting a record hearing on the motion for reconsideration."

The appellee argues the board's reconsideration was unlawful because Latell was not a party to the appeal and because his letter did not comply with the requirement of Ohio Adm. Code 124-11-07(A) that a "motion" must state the relief sought and the basis for granting the relief requested.

Bispeck contends that the board has the inherent authority to reconsider its own decisions. In addition, Bispeck contends that the board's reconsideration was proper because he made a timely request for reconsideration of the board's original decision.

We have recognized that an administrative agency has the inherent authority, in certain circumstances, to reconsider its own decisions:

"Generally, administrative agencies have inherent authority to reconsider their own decisions since the power to decide in the first instance carries with it the power to reconsider. The agencies retain jurisdiction to set aside or otherwise reconsider their decisions until the actual institution of a court appeal or until expiration of the time for appeal, in the absence of specific statutory limitations to the contrary. * * *" *Hal Artz Lincoln-Mercury, Inc.* v. *Ford Motor Co.* (1986), 28 Ohio St. 3d 20, 28 OBR 83, 502 N.E. 2d 590, paragraph three of the syllabus.

Neither R.C. Chapter 124 nor Ohio Adm. Code Chapter 124 contains any specific limitation that would preclude the board from reconsidering its decisions. However, the question in this case, whether an agency may lawfully act on its own initiative to reopen or reconsider a decision, is one of first impression before this court.

R.C. 124.03(A) gives the board authority to hear appeals and to affirm, disaffirm or modify the decisions of the appointing authorities.

Ohio Adm. Code 124-15-03 provides that:

"(A) The state personnel board of review may accept, reject, or modify, in whole or in part, any report and recommendation [of an administrative judge].

"(B) The state personnel board of review may take additional evidence, hear arguments, or remand an appeal to an administrative law judge for further consideration or hearing."

Given the board's broad powers of review and its rules that allow it to act independently of its administrative law judges, we hold that the board may legally act to reconsider or reopen one of its decisions so long as such action is taken within a reasonable time. The case before us meets this test.

The board's order indicating it

would reconsider its original decision was issued on the same day as was its original decision. The board promptly scheduled an oral argument on the case. The second decision was issued only nine days after the first decision. Accordingly, we hold that the board's reconsideration of the initial decision was lawful.

The appellee has failed to show that the board abused its discretion by acting unlawfully or by disaffirming the abolishment without any evidence to support its decision. We hold that Bispeck has a clear legal right to be reinstated to the position of Risk Manager and the respondent has a clear legal duty to comply with the board's decision. The court of appeals erred by denying the requested writ and dismissing the complaint.

For reason of the foregoing, the judgment of the court of appeals is reversed and the writ is allowed.

*Judgment reversed and writ allowed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.