**State, ex rel. Harpley Builders,**
v.
**Akron**
*[Cite as 5 AOA 226]*

*Case No. 14468*
*Summit County, (9th)*
*Decided August 22, 1990*

*John C. Freeman, Attorney at Law, 1530 W. Market St., Akron, OH 44313, for Plaintiffs.*

*Cheri B. Cunningham, Asst. Director of Law, 161 S. High St., Suite 202, Akron, OH 44308, for Defendants.*

*Alexander E. Teodosio, Attorney at Law, 907 TransOhio Bldg., Akron, OH 44308, for Amicus Curiae.*

*Per Curiam.*

This cause came before the court upon the appeal of the City of Akron[1] from a decision of the trial court holding that the Planning Commission erred in rescinding the "preliminary"[2] at approval for a planned unit development. We affirm in part and modify in part. On January 11, 1988, appellee, Harpley Builders, Inc. (Harpley), filed a petition for a conditional use permit for a planned unit development (Eaton Place Allotment), consisting of eight single-family residences. Harpley subsequently converted its conditional use permit request to a request for approval of an allotment.

On March 4, 1988, the city of Akron Planning Commission (Commission) granted "preliminary" approval of the eight-unit allotment plan. The approval of this plan was subject to four conditions.

On July 8, 1988, the allotment plan was placed on the Commission's agenda. The Commission took time on the "final" approval of Eaton Place Allotment.

Harpley then requested the Commission for time at the July 29, 1988 and August, 19, 1988 meetings. On September 19, 1988, Harpley submitted a six-unit allotment plan for Eaton Place. At the September 30, 1988 Commmission meeting, this plan was submitted. The Commission took time on the six-unit development plan. On October 21, 1988, time was taken on the Eaton allotment pursuant to a signed stipulation between the City of Akron and Harpley.

On November 4, 1988, Harpley requested that "final" approval of the eight-unit development be placed on the Commission's agenda for its November 18, 1988 meeting. At this meeting, the Commission voted to rescind the "preliminary" approval granted to the eight-unit development plan. On November 23, 1988, Harpley filed

a complaint containing general counts but it was later stipulated that the case would proceed solely as an administrative appeal, pursuant to R.C. Chapter 2506. The case was referred to a referee. On November 17, 1989, the referee filed findings of fact and conclusions of law, recommending to the court that the decision of the Commission to rescind the "preliminary" plat approval for Eaton Place was error. The City of Akron made objections to the referee's report. On January 25, 1990, the trial court adopted the referee's report.

*Assignments of Error*

"I. The trial court erred by vacating the planning commission's decision to rescind its preliminary plat approval as an administrative board retains jurisdiction and inherent authority over a matter so that it may reconsider a decision before the statutory period for appeal has expired.

"II. The trial court erred by holding that the Akron planning commission has no authority to rescind preliminary approval of a plat is outside the authority of the commission. Rescission is a proper exercise or power which is clearly within the discretion of an administrative board when it properly reconsiders a decision."

Because these assignments are interrelated, they will be discussed together. In considering the claimed errors, we note the limited scope of review afforded the court of appeals by R.C. 2506.04. The court of common pleas may find that an "*** order, adjudication or decision [of an administrative body] is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence on the whole record []" The court of appeals' reviewing authority is limited "to review of the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable, probative evidence,'as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Kisil v. Sandusky* (1984), 12 Ohio St. 3d 30, 34, fn.4.

The parties agree that this case is governed by the provisions of the City of Akron, Ohio Subdivision Plan and Regulations (Subdivision Plan); Section 1208.06(B)(4) thereof provides:

"Approval of Preliminary Plan.

"The City Planning Commission shall forward copies of the preliminary plan to such

officials and agencies as may be necessary for the purpose of study and recommendation. These shall include at least the Directors of Public Service and the City Health Department, and shall also include any other department or agency that the Planning commission deems appropriate in any given case. After receipt of reports from such officials and agencies, the City Planning Commission shall determine whether the preliminary plan shall be approved, approved with modifications or disapproved. If a plan is disapproved, the reasons for such disapproval shall be stated in writing. The City Planning Commission shall act on the preliminary plan within thirty (30) days after filing unless such time is extended by agreement with the developer. When a preliminary plan has been approved by the city Planning Commission, the chairman shall sign all copies and return one (1) to the developer for compliance with final approval requirements. Approval of the preliminary plan shall also be conditional upon compliance with all other applicable statutes, and ordinances (resolutions and regulations) of the City."

Subdivision Plan Section 1208.06(C) provides in part:

"(1) Final plat.

"The developer, having received approval of the preliminary plan of the proposed subdivision, shall submit a final plat of the subdivision and drawings and specifications of the improvements required therein. The final plat shall have incorporated all changes in the preliminary plan required by the City Planning Commission. Otherwise it shall conform to the preliminary plan, and it may constitute only that portion of the approved preliminary plan which the developer proposes to record and develop at the time. The formal plat shall conform to those sections of regulations entitled 'Final Plat Form & Final Plat Contents'.

"***

"(5) Approval by Planning Commission.

"The City planning Commission shall approve or disapprove the final plat within thirty (30) days after it has been filed. Failure of the Commission to act upon the final plat within such time shall be deemed as approval of the plat. If the plat is disapproved, the grounds for disapproval shall be stated in the records of the Commission, and a copy of said record shall be forwarded to the developer. The Commission shall not disapprove the final plat if the developer has done everything that he was required to do and has proceeded in accordance with the

conditions and standards specified in the approved preliminary plat. If disapproved the Developer shall make the necessary corrections and resubmit the final plat within thirty (30) days to the Commission for its final approval. If a plat is refused by the Commission, the person submitting the plat which the Commission refused to approve may file a petition within, ten (10) days after such refusal in the Court of Common Pleas of the county in which the land described is said plat is situated to reconsider the action of the Commission."

"*** "

The City argues that the Commission retains inherent authority to reconsider its own decisions. A long line of Ohio Supreme Court cases has held that administrative agencies have the inherent power to reconsider their own decisions since the power to decide in the first instance carries with it the power to reconsider. *Hal Artz Lincoln- Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St. 3d 20, paragraph three of the syllabus. However, the agencies retain jurisdiction to set aside or otherwise reconsider their decisions until the actual institution of a court appeal or until the time for appeal, in the absence of a specific statutory limitation to the contrary. *Id.*

The existence of an administrative agency's authority depends upon the nature of the functions of and the power exercised by the agency, the scheme of the enabling statute as a whole, and on the evaluations of its specific provisions, such as a provisiOn authorizing an agency to promulgate rules of procedure, or making the administrative determination final and conclusive. Annotation, Powers of Administrative Agency to Reopen and Reconsider Final Decision as Affected by Lack of Specific Statutory Authority (1960), 73 A.L.R. 2d 939, 942. Under the Subdivision Plan, once the Commission has approved the "preliminary" plan and added conditions, the plan in reality becomes final. This plan was recommended for approval by the city of Akron's Department of Planning and Urban Development. The Commission on March 4, 1988 unanimously approved the Eaton Place Plan with the following conditions:

"***

"(1) That improvement drawings and a Final Plat be prepared which meet the requirements of all City Departments.

"(2) That a landscape planting and fencing plan which conforms to the 'Akron Development Guide' as referred to in Section 153.285-.287 of

the Zoning Code be submitted to the Department of Planning and Urban Development for its review of compliance with said guide; and that the landscaping and fencing be installed and maintained as shown on the approved plan.

"(3) That a document be prepared which provides for the Homeowners Association to maintain the cul-de-sac planting area.

"(4) That a storm water management plan for the entire University property be approved by the Engineering Bureau.

"***."

R.C. 2506.01 provides for appeals of final orders, adjudications or decisions of administrative officers or agencies, and it further provides:

"A 'final order, adjudication or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits or legal relationships of a person[.]"

The Subdivision Plan provides for several specified choices as to "final" approval:

"(1) no action within thirty days of filing of the "final" plat, automatic approval;

"(2) is approval if conditions are not met; and

"(3) mandatory approval if conditions are met."

There are no other choices provided, and the Commission is not free to alter the choices. See *Pospisil v. Anderson* (1987), 519 N.Y. Supp. 2d 306, 314.

The developer relied on the approval of the "preliminary" plan with conditions. If the developer meets those conditions, he is entitled to acceptance and approval of that "final" plan without the imposition of new or altered conditions. See *Great Western Savings & Loan Association v. City of Los Angeles* (1973), 31 Cal. App. 3d 403, 107 Cal. Rptr. 350, 364.

The approval or disapproval at the "final" plat hearing is ministerial in nature. Accordingly, we hold that the rights, duties, privileges, benefits or legal relationships of Harpley were determined on March 4, 1988.[3] In order for the Commission to use its inherent power to reconsider its decision, such a reconsideration must have occurred within thirty days after the "preliminary" plan was approved.

For the foregoing reasons, the first and second assignments of error are not well taken.

*Assignment of Error*

"III. The trial court erred by adopting the referee's report as the 8-unit preliminary plat approval of March 4, 1988 became a nullity upon subsequent presentment of the 6-unit plan for preliminary approval on September 19, 1988."

The City contends that when Harpley presented the six unit plan for Eaton Place, the eight-unit plan became a nullity. Therefore, when Harpley requested that the eight-unit plan be placed on the Commission's agenda for "final" approval in November, it acted as a motion to reconsider the original eight-unit plan's "preliminary" approval. Thus, the action taken by the Commission at the November 18, 1988 commission meeting merely formalized the nullity already effectuated by the submission of the six-unit plan.

The Subdivision Plan Section 1208.06(B)(5) provides:

"***

"Approval period.

"The approval of the preliminary plan shall be effective for a maximum period of twelve (12) months and shall guarantee that the terms under which the approval was granted will not be affected by changes to these regulations.

"***."

The eight-unit "preliminary" plan was approved on March 4, 1988. Harpley continued to pursue approval of the eight-unit plan and could not, therefore, have intended the six-unit plan to invalidate the eight-unit plan. Harpley did not withdraw the eight-unit plan by submitting an alternate plan. See In re appeal of David Fiori, Realtor, Inc. (Pa. 1980), 422 A. 2d 1207. Assignment of error three is not well taken.

*Assignments of Error*

"IV. The trial court erred by finding that the city planning commission had a special duty to respond to letters from plaintiffs counsel.

"V. The trial court erred when it adopted the referee report which incorrectly addressed certain issues of fact and law."

The City contends that various statements and omissions made in the findings of fact were erroneous. These statements have no bearing on the decision in this case and cannot be considered as grounds for reversal. As to the other issues presented in the fifth assignment of error, they have been addressed in the first two assignments of error. Assignments of error four and five are overruled.

The trial court concluded that Harpley complied with every requirement (Condition) and ordered the Commission to consider Harpley's "final" approval based upon that mandate. The trial court further held that if the Commission failed to convene and approve Harpley's plan within fourteen days of the final order, the judgment of the trial court would serve as a

"final" approval. This court finds that this portion of the trial court's judgment is beyond the scope of an R.C. 2506 appeal, and the same is hereby deleted from the judgment.

The decision of the trial court is affirmed as modified by this opinion, and the cause is remanded to the City of Akron Planning Commission for further proceedings consistent with this opinion and the law.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

BAIRD, P.J., and CACIOPPO, J., concur.

MAHONEY, J., dissents.

I fail to see how a plan that is clearly preliminary in nature and contemplates a future approval or disapproval decision after consideration of the fulfillment of designated conditions, can be considered "final" thirty days after imposition of those conditions, without the Commission actually determining that the conditions were met. The action on the final plan was hardly a "ministerial" function.

The Planning Commission is a tribunal. It is analogous to a court and like a court can only speak through its "journal" regardless of whether the conditions were in fact met. Like a court reduces its decision to writing and spreads it upon its journal, so must the tribunal here enter its decision in writing in its minutes for the preliminary plan to have become final. That was never done in this case.

What was done here, was the exercise of inherent power by the Commission to sua sponte reconsider its approval of the preliminary plan. (See *Hal Artz Lincoln Mercury v. Ford Motor Co.* (1986), 28 Ohio St. 3d 20 at 25; and *Bispeck v. Bd. of Commrs. of Trumbull* Cty. (1988), 37 Ohio St. 3d 26; State, ex rel. *Borsuk, v. Cleveland* (1972), 28 Ohio St. 2d 224.)

While a cross-appeal was not filed, I believe the Planning Commission erred in not affording the appellee due process when it decided to reconsider its earlier decision on the preliminary plan. This sua sponte motion was not on the agenda for that meeting. While the general issue of a "subdivision" v. "conditional zoning" procedure was discussed at earlier hearings, the appellee clearly went to that November meeting expecting approval or disapproval of its preliminary plan. The motion to reconsider should have been on the agenda and all parties given the opportunity to prepare for that issue. Thus, the trial court erred as a matter of law in not recognizing the tribunal's inherent power to reconsider its decision, and in not finding plain error in the lack of due process afforded the appellee. I would vacate the trial court's judgment, as well as the Commission's order, and remand it to the Commission to afford due process to all parties on the motion to reconsider.

I have purposely avoided any discussion of whether a "Chapter 2506" appeal was a proper procedure to test the lawfulness of the Commission's action.

---

[1] The Northwest Akron Taskforce for a Useful Residential Environment filed a brief as *amicus curiae.*

[2] For purposes of this opinion, when the terms preliminary and final are put inside quotations, this denotes how those terms are used in the Subdivision Plan.

[3] Our holding that this was a "done deal" is buttressed by the statement of counsel for the city of Akron on oral argument that the only avenue available to the Planning Commission was reconsideration of the preliminary approval, since it had no authority simply to deny final approval.