**Robert J. CHANEY, et al,**
**Plaintiffs–Appellant,**

v.

**VILLAGE OF POTSDAM, et al,**
**Defendants–Appellees.**

No. 03–3605.

United States Court of Appeals,
Sixth Circuit.

June 25, 2004.

David G. Roach, Kevin Lantz, Hochman & Roach, Dayton, OH, for Plaintiffs–Appellants.

Lynnette P. Ballato, Law Office of Nicholas E. Subashi, Dayton, OH, Lawrence Edward Barbiere, Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, Amy Sue Thomas, Reminger & Reminger, Columbus, OH, for Defendants–Appellees.

Before: KENNEDY and GILMAN, Circuit Judges; and SHADUR, District Judge.*

KENNEDY, Judge.

Plaintiffs appeal the district court order granting summary judgment to Defendants in this employment-termination case stemming from the suspension of the operations of a police department. Plaintiffs argue that the district court erred when it (1) found that Plaintiffs' constitutional rights were not violated, and (2) dismissed Plaintiffs' state-law claims. We **AFFIRM.**

## BACKGROUND

Plaintiffs, members of the Village of

* The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

Potsdam[1] police force, sued Defendants after the Village voted to suspend the operation of the Village Police Department. Plaintiff Bobby J. Chaney was hired by the Village as a reserve officer in 1995. He was promoted to part-time officer in 1997, and later assistant Chief of Police. In 1998, he became the chief of the Village's police force,[2] which, besides himself, consisted of two part-time officers.

By mid–1999, according to Plaintiffs, the village was experiencing an increase in crime and traffic violations that necessitated an increase in the force. To combat this escalating recidivism, Plaintiff Chief Chaney, a member of the Village safety committee, was authorized to investigate a possibility of obtaining a public grant that might help fund continuous police protection. Plaintiff Chaney learned that the United States Department of Justice ("DOJ") offered a grant program known as Community Oriented Police Services ("COPS.") The COPS program provided federal funding for additional police officers contingent upon both the locality's meeting its obligations of "matching," and the community's commitment to fully fund the officers' salaries after the third year of the grant, a commitment known as "retention." The parties dispute whether or not Plaintiff Chaney fully disclosed all those requirements to the Village council. For the purposes of this appeal, we will assume that Plaintiff Chaney fully disclosed all of the grant requirements.

The Village approved Plaintiff Chaney's proposal to apply for the grant that would have funded three full-time officers and four part-time officers to protect 326 residents of the Village. The final page of the grant application asked about the Village's plan for meeting the retention requirement. The answer provided was that "through the combined resources provided by the village's general fund, a proposed tax levy and police mergers, sufficient funds will be available to retain officers." The reference to the police merger apparently related to an investigation by the Village safety committee of a possibility of merging with either Union Township or the Village of Laura. On or about September 7, 1999, the Chief of Police of the Village of Laura, Steve Terrill, appeared before the Village of Potsdam Village Council in support of a proposed merger of the police forces of the two villages. The merger never passed, being finally tabled on September 16, 1999. Subsequently, discussions were resumed with Union Township concerning the possibility of merging with its police force. Eventually, the Union Township Trustees rejected the Village of Potsdam's overtures.

On or about September 9, 1999, DOJ awarded the Village a COPS grant of approximately $293,067. On or about October 4, 1999, the Village Council unanimously agreed to accept the grant. At the direction of the Village Council, Plaintiff Chaney had sought and received applications from the prospective officers to be hired pursuant to the grant. After interviewing several applicants, Plaintiff Chaney recommended that the Village Council hire, among others: Plaintiffs Anthony Risely and Wayne Miller as full-time officers, and Plaintiffs Eric Doerzbacher, Steven Ondreck, Oscar Hicks II, Jerry Bodey, and Timothy Allen as part-time officers. On October 4, 1999, the Village Council

---

1. The Village of Potsdam, Ohio is located in Southwestern Miami County, about twenty-five miles northwest of Dayton, Ohio. According to the 1990 Census, the Village has a population of 326 individuals.

2. Because the parties use the terms "Chief," "Sheriff," and "Marshal" interchangeably we do not differentiate between these terms in the course of this opinion.

hired these officers and promoted Plaintiff Chaney to full-time Chief of Police. The remaining Plaintiff, Jessica Knox, joined the force as a part-time officer on May 3, 1999.

Plaintiffs alleged that Defendant Mayor Dan Smiley, on behalf of the Village, presented them with offers of employment and promised the newly-hired officers that they would be employed as officers in the Village of Potsdam for four consecutive years unless removed pursuant to Ohio Revised Code § 737.171. Plaintiffs also alleged that Defendant Smiley administered the oath of office to Plaintiffs, but did not read as part of the oath the portion which references federal grants and continuance in office unless removed pursuant to the Ohio Revised Code. Defendant Smiley signed the oaths and contracts on behalf of the Village on October 4, 1999.

One of the first activities of the newly-expanded police department was to investigate an allegation of impropriety against a Village Council member, Defendant Karl Yoder. Defendant Yoder, a councilman who was to become Mayor in January 2000, was also a pastor in a Potsdam Missionary Church. The Village Council utilized the Church's hall for a period of time prior to January 11, 1999 without any formal reimbursement.[3] The Church normally charged $25 for members to use the hall, and $100 for non-members. Yoder proposed, on behalf of the Church, an agreement whereby the Council would pay $25 for meeting in the hall. The Village Council adopted a contract under which it would pay $25 per meeting to utilize the Church's hall for meetings. Another contract allowed the Village to store a police vehicle in the Church garage. Although Defendant Yoder abstained from the Vil-

lage Council votes on these contracts, Ohio law prohibits any council member from having an interest in contracts created with the Village Council. In early November 1999, a representative of the Ohio Auditor informed the Village Council of this legal restriction and recommended that the Village Council move its meetings and police cruiser from Church property. Defendant Yoder voted to comply with the recommendation. Learning of the irregularity, the Village police force opened an investigation, which it categorized as a felony. On December 13, 1999, Plaintiff Bodey conducted a non-custodial interrogation of Defendant Yoder. Plaintiff Chaney alleged that on that day. Defendant Yoder threatened, "If this investigation continues, when I become mayor, there won't be a police department and you won't be a chief." On December 21, 1999, Plaintiff Bodey took Defendant Yoder to the police station for a custodial interrogation.

As the police investigation was continuing, Defendant Councilwoman Debra Acton decided to telephone Mr. Dorr, the DOJ's grant advisor. She learned from him that the Village's COPS grant had been awarded on the understanding that the merger with the Union Township police department was "imminent." Defendant Smiley also spoke with Mr. Dorr prior to December 23, 1999. By December 23, 1999, the Village Council had become concerned over its ability to satisfy the requirements of the COPS grant. At the Village Council meeting, Defendant Smiley charged Plaintiff Chaney with three deficiencies pursuant to the Ohio Revised Code removal and suspension proceedings for deposing a Village Marshal

---

3. Unfortunately, Yoder's deposition is truncated in the appendix and the district court opinion does not clarify why the Village

Council started paying for the use of the Church's hall.

provided in Ohio Revised Code § 737.17.[4] Eventually, the Council approved a motion to "withdraw the grant application and suspend the full-time officers and anything pertaining to the grant and the application, and reapply with new numbers." All but one council member favored these decisions. On the day of the meeting, Defendant Yoder filed a lawsuit against Plaintiffs Chaney and Bodey, seeking damages for the questioning he underwent on December 21, 1999.[5]

On January 13, 2000, Mr. Dorr drafted a letter explaining that the Village either had to decide how it would comply with the matching requirements of the COPS grant or inform the DOJ that it was withdrawing from the program. Mr. Dorr faxed a copy of his letter on January 19, 2000, giving Defendant Yoder a copy before a January 24, 2000 Village Council meeting. At that meeting, the Council dropped the charges against Plaintiff Chaney and voted to return all COPS grant funds received, which totaled approximately $24,000. The Village Council noted that dropping the charges against Defendant Chaney would obviate the need for a hearing on the matter. By February 7, 2000, the Village Council had voted to "suspend all operations of the Police Department until such time as an investigation of the financial stress of the Village can be completed." The Village Council's vote on this question had resulted in a tie; Defendant Smiley, who was under a separate investigation by the police, provided the decisive vote to disband the force. The Village Council retained Plaintiff Chaney, cognizant of a requirement under the Ohio law that each village have a Marshall. On February 17, 2000, the Village Council further voted to "suspend all operations" of the police department, which now consisted of only Plaintiff Chaney. Defendant Yoder provided the tie-breaking vote in this decision that limited Plaintiff Chaney's responsibilities to investigations.

On April 3, 2000, Defendant Yoder reported to the Village Council that Plaintiffs Ondreck, Miller, Bodey, Allen, Risely, Knox, Doerzbacher, and Hicks were approaching the end of their six-month statutory probation period. The Village Council approved Defendant Yoder's proposal to remove the part-time officers from their positions. Plaintiffs alleged that this decision was accompanied by defamatory statements concerning their competency, in general, and defamatory statements to the effect that Plaintiff Chaney had made misrepresentations to the Village Council concerning its obligations in applying for the COPS grant, specifically. However, Plaintiffs have produced no evidence that would tie the Village Council's decision to suspend the police department to the allegedly defamatory statements. Plaintiff

4. More specifically, those deficiencies were:
   1. Misrepresentation of the Village of Potsdam by Bobby J. Chaney in the manner of the COPS grant application to the U.S. Department of Justice. Dishonesty in an oral interview by telephone added to the COPS grant application. He implied that the Village would be policing Union Township, this was the need for the quantity of police requested.
   2. Misleading council of the Village of Potsdam by Bobby J. Chaney to believe that the COPS grant was awarded to the Village of Potsdam on its population alone, while the actual formula used by the U.S. Justice Department is 2.13 officers per 1000 population in the State of Ohio.
   3. The discourteous treatment of the public displayed by Bobby J. Chaney in the representation of the Village of Potsdam with regard to the investigation of the alleged misconduct of a council member.

   J.A. at 625.

5. This lawsuit is not part of this action.

Chaney has admitted that he was never suspended or terminated.

On March 13, 2000, Plaintiffs filed an action alleging 1) a violation of 42 U.S.C. § 1983 for deprivation of property without due process, 2) breach of employment contract, 3) "defamation/slander," and 4) intentional infliction of emotional distress, with an express request for punitive damages. The district court granted Defendants' motions for summary judgment.

## ANALYSIS

■ Plaintiffs claim that they were suspended and then terminated from employment without due process as required by the Fourteenth Amendment. It is clear that Plaintiffs were not provided with a hearing in this case. Accordingly, the only question is whether Defendants are correct in their argument that Plaintiffs have not alleged a property interest of which they could be illegally deprived. The district court found that Plaintiffs had no property interest in continued employment and, accordingly, they had no property interest to be protected. Central to the district court's decision was a factual finding that Plaintiffs' positions have been eliminated for financial reasons and that they have not, to this day, been replaced. The district court also found the allegations of personal animosity as legally irrelevant in this case.

Having had the benefit of full briefing and oral arguments by both parties, we find no error in this aspect of the district court's decision. The Village Council was faced with a prospect of having to employ more officers than its strained treasury could support. The DOJ gave the Village the option of withdrawing from the COPS program. The Village, after much deliberation and with the full realization that it lacked the resources to fund the department after the third year, chose to withdraw and to return to the pre-grant situation of only having a Sheriff (as mandated by Ohio law). The parties disagree about a number of issues, including the relevance of the probationary nature of most Plaintiffs' employment. We do not resolve those issues because it is unnecessary for us to do so. Simply said, Plaintiffs presented us with no authority, state or federal, for the proposition that the Village Council members lack the authority to suspend the operation of a police department for budgetary reasons.[6] We have before us a municipality that, for whatever reason, erroneously decided to participate in the COPS program. Once it was faced with the reality that it had no resources with which to support the newly-acquired police force, it terminated the department. For a federal court to punish a local municipality for such an action would amount to an unwarranted expansion of federal power into matters of purely local concern. The situation could have been different if Plaintiffs have been able to show that the municipality of 326 people could actually support the police force meant to serve and protect approximately 25,000 people, thereby bringing into question the sincerity of Defendants' position that the police

---

6. Plaintiff cite *State ex rel. Bispeck v. Bd. of Commissioners of Trumbull County*, 37 Ohio St.3d 26, 523 N.E.2d 502 (1988), for the proposition that a comprehensive statutory and regulatory framework for abolishing certain civil service positions exists in Ohio. However, as Defendants point out, no analogous provisions exist for the suspension of the police department operations. Plaintiffs in their reply brief do not challenge this rebuttal. Moreover, Ohio law clearly provides that a municipality may abolish positions for budgetary reasons without providing the affected employees with a hearing. *Ryman v. Reichert*, 604 F.Supp. 467, 472 (S.D.Ohio 1985); *Toth v. Village of Elmwood Place*, 20 Ohio App.3d 188, 485 N.E.2d 735, 737 (Ohio App. 1984).

department was terminated for budgetary reasons. However, they have made no such showing in this case.

■ The district court also rejected Plaintiffs' concerns over comments regarding their performance in office. The court reclassified them as a liberty interest in being free from undeserved disparagement by government officials. This Court had previously established a cause of action for violation of the liberty interest implicated whenever a government employee is terminated amid claims of misfeasance or malfeasance. *Chilingirian v. Boris*, 882 F.2d 200 (6th Cir.1989). We further clarified what an employee must do to obtain relief under those circumstances:

> [W]hen a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name. In order to implicate one's liberty interest, five elements must be satisfied. First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation. The employer must have made a statement in the course of the employee's termination that might impose on him a stigma or other disability that would foreclose his freedom to take advantage of other employment opportunities. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. Third, the stigma-

tizing charges must be made public; fourth, the plaintiff must claim that the charges made against him were false; and fifth, the public dissemination must have been voluntary. Finally, the plaintiff must request a name-clearing hearing.

*McManamon v. Charter Township of Redford*, 2000 WL 1888616, *5 (6th Cir.2000). A plaintiff can allege that he suffered a deprivation of liberty without due process of law only after the plaintiff has shown the five elements, has requested a name-clearing hearing, and had this request denied by his employer. *Id. See also Brown v. City of Niota, Tenn.*, 214 F.3d 718, 723 (6th Cir.2000). The district court in this case did not reach the question of whether Plaintiffs established the five elements as required by *Chilingirian* and its progeny. Rather, the court simply held that Plaintiff failed to request a name-clearing hearing, thereby losing any federal claims based on alleged defamation. We agree. Plaintiffs attempt to justify their failure to request a name-clearing hearing by relying on a side-comment from the case that confirmed the need for such a request, indicating that it had before it appellants who did not claim that they "were unaware of their right to a name-clearing hearing." *Quinn v. Shirey*, 293 F.3d 315, 323 (6th Cir.2002). We are unpersuaded by this attempt. Plaintiffs clearly showed that they had the ability to obtain learned counsel to assist them in pursuing this litigation. Their learned counsel could have informed them of the need to request an administrative hearing prior to bringing their case in federal court.

Having dismissed all federal claims, the district court refused to exercise supplemental jurisdiction over remaining state law claims. We find no error in that decision.

## CONCLUSION

For the reasons stated above, we affirm the district court's order granting summary judgment to Defendants.