OPINION
{¶ 1} Appellee-appellant, Ohio Department of Administrative Services ("ODAS"), appeals from a judgment of the Franklin County Court of Common Pleas, which disaffirmed an order of the State Personnel Board of Review ("SPBR") that affirmed the abolishment of appellant-appellee Joyce A. Penrod's job. For the following reasons, we affirm the judgment of the common pleas court.
 {¶ 2} Ms. Penrod was employed as a Facilities Planning Project Manager in the office of the Ohio State Architect. Due to agency reorganization that was prompted by budgetary reductions, her job was abolished, effective September 4, 2002. Thereafter, she appealed to the SPBR, which assigned the matter to an administrative law judge.
 {¶ 3} After conducting a hearing, an administrative law judge issued a report and recommendation, wherein she recommended disaffirmance of the abolishment of Ms. Penrod's job. Objecting to this report and recommendation, ODAS appealed to the SPBR.
 {¶ 4} Thereafter, after requesting additional supplementation by the parties, the SPBR overruled the administrative law judge and affirmed the abolishment of Penrod's job. From the SPBR's order affirming the abolishment of her job, Ms. Penrod appealed to the Franklin County Court of Common Pleas.
 {¶ 5} Finding that there was no reliable, probative, and substantial evidence to support the SPBR's order, the common pleas court disaffirmed the order of the SPBR and ordered Ms. Penrod to be reinstated to her position as Facilities Planning Project Manager, effective as of September 4, 2002. From this judgment, ODAS appeals and assigns a single error for our consideration:
The court of common pleas erred as a matter of law in finding that the order of the State Personnel Board of Review was [not] supported by reliable, probative and substantial evidence and was [not] in accordance with law, when the Ohio Department of Administrative Services demonstrated a statutory basis for the abolishment of Ms. Penrod's position.
 {¶ 6} "An order of the State Personnel Board of Review issued on appeal from a final decision of an appointing authority relative to job abolishments is appealable, pursuant to the provisions of R.C. 119.12."Pitts v. Ohio Dept. of Trans. (1981), 67 Ohio St.2d 378, paragraph two of the syllabus.
 {¶ 7} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Ohio Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 8} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio instructed:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion,i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621.
 {¶ 9} An appellate court does, however, have plenary review of purely legal questions. Chirila v. Ohio State Chiropractic Bd. (2001),145 Ohio App.3d 589, 592, citing Steinfels v. Ohio Dept. ofCommerce, Div. of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 10} Former R.C. 124.321(D),[1] in pertinent part, provided:
Employees may be laid off as a result of abolishment of positions. Abolishment means the permanent deletion of a position or positions from the organization or structure of an appointing authority due to lack of continued need for the position. An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. The determination of the need to abolish positions shall indicate the lack of continued need for positions within an appointing authority. Appointing authorities shall themselves determine whether any position should be abolished and shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the notice of abolishment. If an abolishment results in a reduction of the work force, the appointing authority shall follow the procedures for laying off employees[.] * * *
 {¶ 11} Here, the rationale in support of the abolishment of Ms. Penrod's job was increased efficiency. However, the common pleas court concluded that there was no reliable, probative, and substantial evidence to support a claim of increased efficiency resulting from the abolishment of her job. The common pleas court stated:
* * * Since the Court has already concluded that there was no stated basis of economy for the abolishment, the issue is not determinative of the appeal. The notice to Penrod of August 8, 2002 from DAS states in part: "This position is being abolished for reasons of efficiency. With recent reductions in the state budget, and with additional budget reductions planned for the next biennium, the SAO [State Architect's Office] must now address reorganizing the Interior Design Services (IDS) to efficiently accommodate available capital projects and capital funds." * * * While the [SPBR] has expertise in this area and is entitled to due deference, this Court cannot adopt a position that blurs the distinction set forth by the legislature. There may be more than one basis for a job abolishment, nonetheless the appointing authority should be held to a standard of enunciating the actual basis or bases in order to fairly apprise an employee of her or his rights if a dispute should arise and an appeal prompted.
(Aug. 26, 2004 Decision, at 9-10.)
 {¶ 12} ODAS argues there is substantial overlap between the meanings of "reorganization for * * * efficient operation" and "reorganization for * * * reasons of economy," and, because there is a substantial overlap, the common pleas court erred.
 {¶ 13} "A basic rule of statutory construction requires that `words in statutes should not be construed to be redundant, nor should any words be ignored.'" D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health,96 Ohio St.3d 250, 2002-Ohio-4712, at ¶ 26, quoting E. Ohio Gas Co. v.Pub. Util. Comm. (1988), 39 Ohio St.3d 295, 299. Moreover, "[s]tatutory language `must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.'" Id., quoting State ex rel. Myers v. Spencer Twp. RuralSchool Dist. Bd. of Edn. (1917), 95 Ohio St. 367, 372-373.
 {¶ 14} Here, if "reorganization for * * * efficient operation" and "reorganization for * * * reasons of economy" in former R.C. 124.321(D) have the same meaning, then these provisions in former R.C. 124.321(D) are redundant and either of these provisions would be rendered superfluous. Such a construction is contrary to the basic rule of statutory construction that "words in statutes should not be construed to be redundant, nor should any words be ignored.'" Id., quoting E. Ohio GasCo., at 299.
 {¶ 15} Accordingly, ODAS's contention that the common pleas court erred because it declined to blur the distinctions set forth in former R.C. 124.321(D) is not well-taken.
 {¶ 16} In State ex rel. Bispeck v. Bd. of Commrs. of Trumbull Cty.
(1988), 37 Ohio St.3d 26, construing a former version of Ohio Adm. Code124-7-01(A)(1), the Supreme Court of Ohio determined that an appointing authority has the burden of proving by a preponderance of the evidence that a job abolishment was undertaken due to the lack of continuing need for the position, a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for a lack of work that is expected to last more than 12 months. Id. at 28. Cf. Ohio Adm. Code124-7-01(A)(1), effective March 28, 1998.[2]
 {¶ 17} In Bispeck, the court considered, among other things, whether the SBPR misconstrued the terms "economy" and "efficient operation" in the context of permissible reasons for abolishment of positions as set forth in former R.C. 124.321(D). Id. at 29-30. In Bispeck, the appellee, the Board of Commissioners of Trumbull County, argued that the SBPR's use of "increased efficiency" and "more efficient" in an order indicated that the SBPR required an appointing authority to demonstrate that there was a greater output of performing or functioning after an abolishment. Id. at 30. The appellee contended that such a requirement misconstrued and exceeded former R.C. 124.321(D), which allowed abolishments where a reorganization occurred for "efficient operation" or "for reasons of economy." Id.
 {¶ 18} Observing that the relator's job was abolished as part of the reorganization for the efficient operation of the county commissioner's office, the Bispeck court stated that "[i]n order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operation before and after the abolition." Id. TheBispeck court further stated that "[w]e believe that the intent of the General Assembly was to require an appointing authority to justify a job abolishment by proving that the abolishment would result in more efficient operations." Id. at 30-31.
 {¶ 19} In Monger v. Fairfield Cty. Dept. of Human Serv. (Apr. 6, 2000), Franklin App. No. 99AP-492, this court considered an appeal by the Fairfield County Department of Human Services from a judgment of a common pleas court that disaffirmed the abolishment of a clerical supervisor position. Affirming the judgment of the common pleas court, the Monger
court found that none of the witnesses on behalf of the county department of human services had any personal knowledge as to the appellee's duties prior to a job abolishment and the merger of two county agencies. Only one witness on behalf of the county department of human services was able to testify to the appellee's current job duties. The Monger court therefore determined that the county department of human services did not present "before and after evidence" as required by Bispeck. The Monger court further found that the county department of human services failed to produce evidence of increased efficiency. The Monger court determined that the common pleas court correctly discounted an administrative law judge's reliance on a report as evidence of increased efficiency because the report was produced prior to the merger and abolishment. The Monger court further observed that an administrative law judge's reliance on notions of sensibility did not rise to the level of probative evidence and that the fact that the county did not receive any negative feedback from the public after the merger also did not rise to the level of probative evidence of increased efficiency due to the abolishment of the appellee's position.
 {¶ 20} In the present appeal, ODAS argues that Monger misconstruedBispeck and this court should follow the view of the First District Court of Appeals in McAlpin v. Shirey (1997), 121 Ohio App.3d 68. We disagree.
 {¶ 21} In McAlpin, Walter McAlpin appealed to the Civil Service Commission of the city of Cincinnati following his demotion to police captain after abolishment of an assistant police chief position within the Cincinnati Police Division. After the civil service commission denied McAlpin's appeal, McAlpin appealed to the Hamilton County Court of Common Pleas, which affirmed the commission's decision. From the common pleas court's decision, McAlpin appealed to the First District Court of Appeals.
 {¶ 22} In his appeal before the appellate court, relying uponBispeck, McAlpin argued, among other things, that the city was required to prove that abolishment of an assistant police chief position did result in a more efficient operation. Id. at 76. Rejecting McAlpin's argument, the First District court stated: "[W]hat the [Bispeck] court actually said was, `We believe the intent of the General Assembly was to require an appointing authority to justify a job abolishment by proving that the abolishment would result in more efficient operations.'"McAlpin, at 76, quoting Bispeck, at 30-31. (Emphasis sic.) The McAlpin
court further stated:
The [Bispeck] court also quoted from Ohio Adm. Code 124-7-01(A)(1), which states that "[a]ppointing authorities shall demonstrate by a preponderance of the evidence that a job abolishment was undertaken due to the lack of the continuing need for the position, a reorganization for the efficient operation of the appointing authority, for reasons of economy or for a lack of work expected to last more than twelve months."
Id. at 76, quoting Bispeck, at 28 (emphasis sic).
 {¶ 23} Agreeing with the common pleas court's decision and quoting with approval the common pleas court, the McAlpin court stated:
"[T]o adopt appellant's position that a * * * City * * * must establish prior to the abolishment of a civil service position that the abolishmentwill result in greater efficiency is to, [sic] delegate a position of the managerial and fiscal responsibility of the City government to the Civil Service Commission. Such a delegation of legislature [sic] and executive authority is inappropriate. Rather, the rule should be * * * that the Commission may approve the abolishment if it finds it is designed to promote efficiency in the future and is not an attempt to avoid civil service laws." (Emphasis sic.)
Id.
 {¶ 24} The McAlpin court further stated:
In this case, the reorganization had been in effect for only three months at the time of the hearing before the commission. The evidence did not show that efficiency had increased in that time, and it may even have decreased. Nevertheless, the commission concluded that the plan was designed to promote efficiency, and the fact that it did not work well once put in practice was not a matter for the commission but for the administration of the city. This finding was supported by a preponderance of substantial, reliable and probative evidence, and this court will not reverse it.
Id.
 {¶ 25} We believe the court's view in McAlphin that a reviewing authority, such as the SBPR, properly may approve an abolishment if it finds that such an abolishment is designed to promote efficiency in the future and is not an attempt to avoid civil service laws is inconsistent with Bispeck. To merely require that a reviewing authority show that an abolishment was undertaken for purposes of efficiency without demonstrating efficiency gains conflicts with Bispeck's instruction that "[i]n order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operation before and after the abolition." Bispeck, at 30.
 {¶ 26} Accordingly, we do not conclude that Monger is in error and we decline ODAS's invitation to apply McAlpin in this case.
 {¶ 27} At the hearing before the administrative law judge, David Choban, Allison Schaeffer, and Roger Booker, testified on behalf of ODAS.
 {¶ 28} David Choban, business manager for the General Services Division of ODAS, testified that on July 1, 2002, the Governor of Ohio imposed a 15-percent budgetary reduction for all state agencies, which, as applied to the General Services Division of ODAS, amounted to a reduction of $1.4 million in funding from the state's General Revenue Fund. (Tr. 11-13.) Choban testified that, due to the budgetary reduction that was ordered by the governor, the agency was faced with cutting $1.4 million from its budget with $300,000 of the $1.4 million being absorbed through personnel reduction. (Tr. 16.)
 {¶ 29} According to Mr. Choban, Ms. Penrod's position was funded through an allotment from the General Revenue Fund (Tr. 14), and Ms. Penrod's position could not have been funded through rotary funding, another funding source. (Tr. 22.) Mr. Choban testified that during the reorganization of the State Architect's Office, in addition to Ms. Penrd's position, other positions within the State Architect's Office were abolished. (Tr. 20.)
 {¶ 30} According to Mr. Choban, faced with budget cuts, the State Architect's Office reorganized the Interior Design section, within which Penrod worked, to promote efficiency. (Tr. 18.) Upon cross-examination, Mr. Choban also testified that, according to a document that he prepared, although the Interior Design section was reorganized to promote efficiency, the overall level of service following the reorganization was projected to be reduced. (Tr. 24.)
 {¶ 31} Mr. Choban also testified that during the reorganization process of the State Architect's Office, additional personnel were added, including project managers and energy specialists. (Id. at 32.) According to Mr. Choban, these additional persons added an additional $450,000 to the budget; however, according to Mr. Choban, these positions were funded through rotary accounts, not funding from the General Revenue Fund. (Tr. 34, 36.)
 {¶ 32} Allison Schaeffer, Interim Human Resources Administrator for ODAS, testified that as part of her duties she oversaw the abolishment process and worked with deputy directors and managers to assist with "fine tuning" rationales for abolishments. (Tr. 71, 72.) Ms. Schaeffer testified that "efficiency" was the rationale for the reorganization within the General Services Division. (Id. at 73.)
 {¶ 33} According to Roger Booker, State Architect of Ohio, prior to the abolishment of her job, Ms. Penrod was the manager for the Interior Design section and she oversaw four other staff persons. (Tr. at 41, 42.) Mr. Booker testified that a primary function of Ms. Penrod's job was supervisory. (Id. at 42.)
 {¶ 34} When queried about why the Facilities Planning Project Manager position was abolished, Mr. Booker testified, in part, as follows:
When it became apparent that we were going to have to cut into our staffing as deeply as we did, we — we knew that we were going to have to lose a G.R.F. [General Revenue Funded] position. And that then became the decision of well, which — which one of those G.R.F. positions.
We could absorb the management responsibilities and functions that Ms. Penrod was producing as a part of her functions. But we were less expert are [sic] doing the interior design, the actual hands-on, day-to-day space planning and interior design that was handled by those staff that were formerly management, Ms. Penrod.
So that made the decision fairly clear and fairly obvious in our mind that we would eliminate the position that — that we could — that we could absorb the duties and responsibilities of using the remaining staff.
(Tr. 49-50.)
 {¶ 35} Additionally, Mr. Booker testified as follows:
Q. [By Assistant Attorney General Anne Thomson]: * * * And the abolishments were for the reorganization for the more efficient operation of your office. Has your office operated more efficiently since the abolishments occurred?
A. It has. We've been able to maintain our projects — project load and — and had little or no complaints of any significance from our client — our clientele.
Q. Have you decreased your level of services?
A. We have — we probably have.
Q. Okay.
A. I don't like to tell my boss that, but we — we're handling pretty much the same level of projects, the same number of projects that we did a year, year-and-a-half ago with — with half as many people —
Q. Okay.
A. — Roughly. We've been able to touch on the projects and manage them with a certain level of care, but not with the intensity that we want or that those projects actually need.
(Tr. 54.)
 {¶ 36} In Bispeck, the Supreme Court of Ohio instructed that "[i]n order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operation before and after the abolition." Id. at 30. Thus, applying Bispeck, to determine whether any efficiency gains were accomplished by the abolishments within the State Architect's Office, including the abolishment of Ms. Penrod's position, the common pleas court was required to consider the agency's operation before and after the abolishments.
 {¶ 37} Mr. Booker's testimony that "[w]e've been about to touch on the projects and manage them with a certain level of care, but not with the intensity that we want or that those projects actually need," (Tr. 54), and Mr. Choban's testimony that although the Interior Design section was reorganized to promote efficiency, the overall level of service was anticipated to be reduced following the abolishments (Tr. 24), support the common pleas court's view that the reorganization did not result in increased agency efficiency.
 {¶ 38} Furthermore, Mr. Booker's testimony that the agency did not receive any significant complaints after the reorganization does not rise to the level of probative evidence of increased efficiency due to the abolishment of Ms. Penrod's position. See Monger, supra.
 {¶ 39} Based upon our review of the record, we cannot conclude that the common pleas court abused its discretion when it concluded that that there was no reliable, probative, and substantial evidence to support a claim of increased efficiency resulting from the abolishment of Ms. Penrod's job. Accordingly, we find that the common pleas court did not abuse its discretion by disaffirming the SPBR's order, and acknowledge that, absent an abuse of discretion, an appellate court may not substitute its judgment for that of a common pleas court. Therefore ODAS's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Christley, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] (2005) Am.Sub.H.B. No. 66 amended R.C. 124.321(D), effective September 29, 2005.
[2] Ohio Adm. Code 124-7-01(A)(1), effective March 28, 1998, provides: "The appointing authority shall demonstrate by a preponderance of the evidence that a job abolishment was undertaken due to a lack of continuing need for the position based on: a reorganization for the efficient operation of the appointing authority; reasons of economy; or a lack of work expected to last one year or longer."