DECISION
{¶ 1} Pursuant to App.R. 25, appellee-appellant, Ohio Department of Administrative Services, Office of Employee Services ("ODAS"), moves for an order to certify a conflict between our decision in Penrod v. Dept. of Adm. Serv., Franklin App. No. 04AP-1118, 2005-Ohio-5836, and McAlpin v. Shirey
(1997), 121 Ohio App.3d 68. Appellant-appellee, Joyce A. Penrod, opposes ODAS's motion.
 {¶ 2} Section 3(B)(4), Article IV, Ohio Constitution governs motions seeking an order to certify a conflict. Section 3(B)(4) provides:
Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.
See, also, Whitelock v. Gilbane Bldg. Co. (1993),66 Ohio St.3d 594, syllabus, rehearing denied by Whitelock v. ClevelandClinic Found. (1993), 67 Ohio St.3d 1420; App.R. 25; and S.Ct.Prac.R. IV.
 {¶ 3} Before and during the certification of a case to the Supreme Court of Ohio pursuant to Section 3(B)(4), Article IV, Ohio Constitution, three conditions must be met. Whitelock, at 596. The Whitelock court instructed:
* * * First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law — not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends is in conflict with the judgment on the same question by other district courts of appeals. * * *
Id. (Emphasis sic.)
 {¶ 4} Nevertheless, "[t]here is no reason for a Court of Appeals to certify its judgment as conflicting with that of another Court of Appeals where * * * the point upon which the conflict exists had no arguable effect upon the judgment of the certifying court." Pincelli v. Ohio Bridge Corp. (1966),5 Ohio St.2d 41, 44. "Questions certified should have actually arisen and should be necessarily involved in the court's ruling or decision." Id.
 {¶ 5} ODAS proposes this question for certification:
When a public employer abolishes an employee's position "as a result of a reorganization for * * * efficient operation" under R.C. 124.321(D), may the employer satisfy the statute by showing that it reasonably projected that greater efficiency would result, or must an employer also show that the abolishment actually resulted in improved efficiency?
(Motion to Certify a Conflict, at 2.)
 {¶ 6} In State ex rel. Bispeck v. Bd. of Commrs. of TrumbullCty. (1988), 37 Ohio St.3d 26, the Supreme Court of Ohio considered, among other things, whether the State Personnel Board of Review ("SPBR") misconstrued the terms "economy" and "efficient operation" in the context of permissible reasons for abolishment of positions as set forth in former R.C. 124.321(D). Id. at 29-30. The Bispeck court considered this excerpt of former R.C. 124.321(D):
"* * * An appointing authority may abolish positions as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work. * * * Appointing authorities * * * shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the notice of abolishment. * * *"
Id. at 29.[1]
 {¶ 7} In Bispeck, the appellee, the Board of Commissioners of Trumbull County, argued that the SPBR's use of "increased efficiency" and "more efficient" in an order showed that the SPBR required an appointing authority to demonstrate that there was a greater output of performing or functioning after an abolishment. Id. at 30. The appellee contended that such a requirement misconstrued and exceeded former R.C. 124.321(D), which permitted abolishments where a reorganization occurred for "efficient operation" or "for reasons of economy." Id.
 {¶ 8} Observing that the appellee contended that the relator's job was abolished as part of the reorganization for the efficient operation of the county commissioner's office, theBispeck court stated that "[i]n order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operation before and after the abolition." Id. The Bispeck court further stated that "[w]e believe that the intent of the General Assembly was to require an appointing authority to justify a job abolishment by proving that the abolishment would result in more efficient operations." Id. at 30-31.
 {¶ 9} In the case before us, ODAS appealed from a judgment of the common pleas court, which disaffirmed an order of the SPBR that affirmed the abolishment of Ms. Penrod's job. See our opinion at ¶ 1. Finding that the common pleas court did not abuse its discretion, we affirmed the judgment of the common pleas court. Id. at ¶ 39.
 {¶ 10} According to the record, budgetary reductions prompted the office of the Ohio State Architect to reorganize, which resulted in the abolishment of Ms. Penrod's job for the stated rationale of increased efficiency. Id. at ¶ 2, 11. FollowingMonger v. Fairfield Cty. Dept. of Human Serv. (2000), Franklin App. No. 99AP-492, we construed Bispeck to require the common pleas court to consider "before and after evidence" to determine whether any efficiency gains were accomplished by the abolishment of Ms. Penrod's position. Specifically, we stated in our opinion at ¶ 36:
In Bispeck, the Supreme Court of Ohio instructed that "[i]n order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operation before and after the abolition." Id. at 30. Thus, applying Bispeck, to determine whether any efficiency gains were accomplished by the abolishments within the State Architect's Office, including the abolishment of Ms. Penrod's position, the common pleas court was required to consider the agency's operation before and after the abolishments.
See, also, Monger, supra, construing Bispeck (stating that "[t]he Supreme Court of Ohio [in Bispeck] noted that the legislature intended for appointing authorities to have to prove that an abolishment resulted in more efficient operations. * * * To determine whether any efficiency gains were achieved from the abolishment, the agency's operations before and after the abolishment must be considered. * * *").
 {¶ 11} After reviewing the evidence, we could not conclude that the common pleas court abused its discretion when it found no reliable, probative, and substantial evidence to support a claim of increased efficiency resulting from the abolishment of Ms. Penrod's job. See ¶ 39 of our opinion.
 {¶ 12} In this case, ODAS argued that Monger misconstruedBispeck and urged us to follow McAlpin v. Shirey (1997),121 Ohio App.3d 68. See our opinion at ¶ 20. In McAlpin, the First District Court of Appeals rejected an argument that the city of Cincinnati was required to prove that the abolishment of an assistant police chief position resulted in a more efficient operation. Id. at 76. Construing Bispeck, the McAlpin court stated: "[W]hat the [Bispeck] court actually said was, `We believe the intent of the General Assembly was to require an appointing authority to justify a job abolishment by proving that the abolishment would result in more efficient operations.'" Id., quoting Bispeck, at 30-31. (Emphasis sic.) The McAlpin
court further stated:
* * * The [Bispeck] court also quoted from Ohio Adm. Code124-7-01(A)(1), which states that "[a]ppointing authorities shall demonstrate by a preponderance of the evidence that a job abolishment was undertaken due to the lack of the continuing need for the position, a reorganization for the efficient operation of the appointing authority, for reasons of economy or for a lack of work expected to last more than twelve months." * * *
Id. at 76, quoting Bispeck, at 28. (Emphasis sic.)
 {¶ 13} Agreeing with the common pleas court's decision and quoting with approval the common pleas court, the McAlpin court stated:
"[T]o adopt appellant's position that a * * * City * * * must establish prior to the abolishment of a civil service position that the abolishment will result in greater efficiency is to, [sic] delegate a position of the managerial and fiscal responsibility of the City government to the Civil Service Commission. Such a delegation of legislature [sic] and executive authority is inappropriate. Rather, the rule should be * * * that the Commission may approve the abolishment if it finds it is designed to promote efficiency in the future and is not an attempt to avoid civil service laws."
Id. (Emphasis sic.)
 {¶ 14} Disagreeing with McAlpin, we stated in our opinion at ¶ 25:
We believe the court's view in McAlpin that a reviewing authority, such as the SBPR, properly may approve an abolishment if it finds that such an abolishment is designed to promote efficiency in the future and is not an attempt to avoid civil service laws is inconsistent with Bispeck. To merely require that a reviewing authority show that an abolishment was undertaken for the purposes of efficiency without demonstrating efficiency gains conflicts with Bispeck's instruction that "[i]n order to determine whether any efficiency gains were accomplished by the abolishment, the board must consider the county's operation before and after the abolition." Bispeck, at 30.
 {¶ 15} Because we construed Bispeck to require that, when determining whether any efficiency gains were accomplished by an abolishment, an entity's operation before and after the abolishment must be considered, and because in McAlpin the First District Court of Appeals construed Bispeck to require that a reviewing authority must only consider whether a job abolishment was undertaken to promote future efficiency without demonstrating efficiency, we find our decision conflicts withMcAlpin as to a question of law as stated in Bispeck.
Moreover, this conflict concerning Bispeck is a conflict concerning a material matter. See Pincelli, at 44 (stating that "[q]uestions certified should have actually arisen and should be necessarily involved in the court's ruling or decision").
 {¶ 16} Therefore, for the foregoing reasons, we find ODAS's motion for an order to certify a conflict between Penrod andMcAlpin is well-taken.
 {¶ 17} Consequently, we certify the following question to the Supreme Court of Ohio pursuant to Section 3(B)(4), Article IV, Ohio Constitution, and App.R. 25:
When an appointing authority abolishes an employee's position as a result of a reorganization for efficient operation under former R.C. 124.321(D), may the appointing authority satisfy former R.C. 124.321(D) by showing that it reasonably projected that greater efficiency would result, or must an appointing authority also show that the abolishment actually resulted in improved efficiency?
 {¶ 18} Accordingly, for the foregoing reasons, we grant ODAS's motion to certify a conflict pursuant to App.R. 25. Furthermore, as required by Section 3(B)(4), Article IV, Ohio Constitution, we certify the record of the case to the Supreme Court of Ohio for review and final determination.
Motion to certify granted.
 Bryant and Christley, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
[1] Since the Supreme Court of Ohio's decision in Bispeck,
R.C. 124.321(D) has been amended. See (2005) Am.Sub.H.B. No. 66 amending R.C. 124.321(D), effective September 29, 2005. R.C.124.321(D)(1) now provides:
Employees may be laid off as a result of abolishment of positions. As used in this division, "abolishment" means the deletion of a position or positions from the organization or structure of an appointing authority.
For purposes of this division, an appointing authority may abolish positions for any one or any combination of the following reasons: as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work.